**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL ACTION** |
| **VERSUS** | * | **NO. 08-132** |
| **ROGER WILLIAMS** | * | **SECTION "B"(3)** |

<u>**ORDER**</u>

Before the Court is Petitioner, Roger Williams' ("Williams"), motion under 28 U.S.C. §2255 to vacate, set aside, or correct sentence by a person in federal custody. (Rec. Doc. No. 48). For the reasons enunciated below,

**IT IS ORDERED** that Petitioner's motion under 28 U.S.C. §2255 to vacate, set aside, or correct sentence by a person in federal custody. (Rec. Doc. No. 48) be and is hereby **DENIED**.

I. *Facts of the Case*

On January 22, 2008, officers with the Jefferson Parish Sheriff's Office approached 309 North Elm Street, Apartment A in Metairie, to investigate a complaint that Williams was selling drugs from the apartment he shared with his grandmother. (Rec. Doc. No. 20 at 1). Officers spoke to Williams' grandmother, who subsequently gave written consent to search the residence. *Id*. Once inside Williams' bedroom, officers observed crack and cocaine residue within plain view, which allowed them to obtain a search warrant. *Id*. at 2. The subsequent search of Williams' bedroom uncovered 97 grams of marijuana, 128 bags of crack

1

cocaine, 126 grams of cocaine, over $5000.00 in cash, two firearms, and other drug paraphernalia. *Id.* Williams has previously been convicted of felony possession of cocaine. *Id.*

On May 22, 2008, a Grand Jury indicted Williams, charging him with three counts of possessing with intent to distribute more than 50 grams of cocaine base ("crack"), one count of possessing with intent to distribute an amount of cocaine hydrochloride, one count of possessing a firearm in furtherance of a drug trafficking crime, and one count of possessing a firearm after having previously been convicted of a felony. (Rec. Doc. No. 1).

On August 6, 2008, pursuant to a plea agreement, Williams pleaded guilty to Count One and Count Three. (Rec. Doc. No. 17). Count One charged Williams with intent to distribute 50 grams or more of crack in violation of 21 § U.S.C. §§ 841(a)(1) and 841 (b)(1)(A). *Id.* Count Three charged possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). *Id.*

During the plea colloquy, the Assistant United States Attorney filed a bill of information in open court noticing a sentence enhancement based on Williams' prior convictions, pursuant to 21 U.S.C. § 851. (Rec. Doc. No. 28 at 5). The Court asked Williams whether he was aware of the § 851 enhancement, whether he understood that he was subject to an increased

2

sentenced and whether he had discussed the matter with his attorney.  *Id.* at 9, 22-23.  In response to the Court's questions, Williams repeatedly replied in the affirmative, acknowledging that he would receive an enhanced sentence.  *Id.* In addition to the discussion between the Court and Williams, the plea agreement signed by both parties observed that the penalties for Count One were enhanced pursuant to the § 851 bill of information.  (Rec. Doc. No. 19 at 2).

On November 5, 2008, the Court sentenced Williams to 240 months imprisonment as to Count One, 60 month imprisonment as to Count Three to be served consecutively, and 10 years of supervised release as to Count One following any term of imprisonment.  (Rec. Doc. No. 21 at 3).  The formal judgment of the Court was entered on November 13, 2008.  (Rec. Doc. No. 22).

On November 20, 2008, Williams filed a Notice of Appeal, which argued that the § 851 enhancement was improper because the record did not reflect that the bill of information was timely filed.  (Rec. Doc. No. 23).  In response to the government's motion to correct, supplement and conform the record, this Court located the § 851 bill of information and added it to the record. (Rec. Doc. No. 43).  On October 7, 2009, the Fifth Circuit subsequently affirmed Williams' sentence.  *United States v. Williams,* 2009 WL 3199614, at **1 (5th Cir. 2009).

Well over one year later, on February 3, 2011, Williams filed a motion to vacate, set aside, or correct sentence by a person in federal custody pursuant to 28 U.S.C. § 2255. (Rec. Doc. No. 50 at 4).

Petitioner seeks relief under 28 U.S.C. § 2255 for ineffective assistance of counsel. (Rec. Doc. No. 48 at 2). Williams alleges that but for his counsel's deficient performance, he would not have pleaded guilty, but would have instead insisted on a trial. *Id.* at 12. Williams contends that his counsel was ineffective because he: 1) failed to file a motion to suppress evidence seized in the police's search of Williams' residence; 2) advised Williams to plead guilty when the Factual Basis was insufficient to prove that he possessed a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c); and 3) failed to object to the timeliness of the Government's 21 U.S.C. § 851 enhancement. *Id.* at 6.

Williams first argues that his counsel erred by failing to file a motion to suppress physical evidence seized from his home by police. *Id.* According to Williams, police lacked probable cause for a search, and did not have a reasonable basis for the "knock and talk" conducted with Williams' grandmother. *Id.* at 7. Although his grandmother subsequently signed a written consent form allowing officers to search the premises, Williams maintains that this consent was involuntary and coerced. *Id.* at 8.

4

Williams argues that the items seized should have been excluded and that his counsel was ineffective for failing to file a motion to suppress. *Id.*

Williams next argues that counsel was ineffective for advising him to plead guilty. (Rec. Doc. No. 48 at 9). According to Williams, the Factual Basis did not adequately demonstrate that he possessed a firearm in furtherance of a drug trafficking offense, or that he thus violated 18 U.S.C. § 924(c). *Id.* Williams asserts that the mere presence of a firearm is insufficient to establish a § 924(c) offence. *Id.* at 10. He contends that but for his counsel's ineffective advice on this matter, he would not have pleaded guilty to Count Three and would have instead proceeded to trial. *Id.* at 12.

Finally, Williams alleges that the government's 21 U.S.C. § 851 bill of information noticing a sentence enhancement was filed more than six months after he entered his guilty plea, and was therefore untimely. (Rec. Doc. No. 48 at 14.) To support his claim, Williams points to the instant docket sheet, which first references the bill of information on April 22, 2009 – more than six months after his guilty plea. *Id.* Williams contends that the enhancement was thus improperly applied to his sentence, and counsel's failure to object constituted ineffective assistance. *Id.*

Williams requests that this court grant discovery and an evidentiary hearing, in addition to a certificate of appealability ("COA"), with respect to his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (Rec. Doc. No. 48).

Respondent, contends that Williams has not established that either (1) his counsel was constitutionally ineffective, or (2) but for his counsel's deficiency, he would have insisted on a trial instead of pleading guilty. (Rec. Doc. No. 50). Consequently, Respondent asserts that Williams is not entitled to relief pursuant to 28 U.S.C. § 2255, and requests that this Court deny Williams' motion without granting discovery, an evidentiary hearing, or a COA. *Id.* at 15.

## II. *Law and Analysis*

### A.  Standard of Review

Pursuant to 28 U.S.C. § 2255, this Court may vacate, set aside, or re-sentence a defendant under circumstances where it was "without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C.A. § 2255; *United States v. Addonizio,* 44 U.S. 178, 185, 99 S. Ct. 2235, 2240 (1979).  Recovery under § 2255 is limited to violations of constitutional rights and a narrow range of injuries that could not have been raised on direct appeal and would, if condoned,

6

result in a complete miscarriage of justice. *United States v. Acklen,* 47 F.3d 739, 741 (5th Cir. 1995).

Because challenges pursuant to § 2255 cannot substitute for a direct appeal, the movant must establish both a procedural default and actual prejudice resulting from the error, when raising constitutional issues for the first time on collateral review. *Id.* at 742. As granted by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), prisoners must file a § 2255 motion one year from the date on which their conviction becomes final. Pub. L. No. 104-132, 110 Stat. 1214. Within the Fifth Circuit, a conviction becomes final when it is no longer subject to examination on direct appeal, as held by that court in *United States v. Morales,* 854 F.2d 65, 68 (5th Cir. 1988).

Here, Williams filed the instant motion on February 2, 2011, more than one year after the Fifth Circuit resolved his appeal on October 7, 2009. (Rec. Doc. No. 48). Williams argues that the AEDPA statute of limitations is subject to equitable tolling, and that his § 2255 motions should not be deemed untimely, because of his alleged detrimental reliance on the Berniard Litigation Firm to file his motion in a timely manner. *Id.* at 4-5. The Respondent does not contest this claim, and does not argue the untimeliness of Williams' motion. (Rec. Doc. No. 50 at 4). The Court must therefore examine the central issue raised in the claim, the alleged ineffective assistance of counsel.

B.   <u>Ineffective Assistance of Counsel</u>

A claim of ineffective assistance of counsel is analyzed according to the two-pronged test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under the *Strickland* test, the petitioner must demonstrate that 1) his attorney's performance was deficient and 2) the deficient performance so prejudiced the petitioner's defense that the proceeding was fundamentally unfair.  *Id.* at 687.  The petitioner must prove that he has satisfied both elements of the *Strickland* inquiry, otherwise the Court may dispose of the claim.  *Id.* at 697.

To satisfy the first prong, petitioner must show that his counsel's representation violated an objective standard of reasonableness.  *Id.* at 660.  Counsel's performance, however, should be reviewed with great deference; judicial scrutiny must maintain a strong presumption that the conduct fell within a wide range of reasonableness under professional norms.  *United States v. Payne,* 99 F.3d 1273, 1282 (5th Cir. 1996).

If petitioner can prove that his counsel's performance was deficient, he must subsequently show that he suffered prejudice as a result.  *Strickland,* 466 U.S. at 687.  A petitioner has been prejudiced when there exists a reasonable probability that, but for counsel's defective performance, the result of the proceeding would have been different.  *Id.* at 669.  In this case, the result

8

of the proceeding was a guilty plea and an ensuing sentence; therefore, prejudice exists if there is reasonable probability that, but for the counsel's errors, the petitioner would not have entered a guilty plea and would have instead insisted on a trial. *Payne*, 99 F.3d at 1282.

Here, Williams argues that his counsel was ineffective with respect to three actions:  1) failing to file a motion to suppress, 2) advising Williams to plead guilty to Count Three of the offense, and 3) failing to object to the Government's § 851 enhancement. (Rec. Doc. No. 48 at 6).  For each action, Williams must prove that a) counsel's conduct was deficient and b) but for that conduct, he would not have pleaded guilty to Counts One and Three.

1. <u>Failure to File Motion to Suppress</u>

Williams alleges that counsel was deficient for failing to file a motion to suppress.  (Rec. Doc. No. 48 at 7-8). Specifically, he contends that police executed an impermissible search of his residence on January 22, 2008, therefore evidence seized on that occasion should have been suppressed.  *Id*. Williams premises this argument on two grounds: 1) police did not have a sufficient basis to conduct the "knock and talk" procedure and 2) his grandmother's consent was involuntary, thus rendering the search improper.  *Id.*

9

For reasons enunciated infra, Williams does not satisfactorily demonstrate either that knock and talk was improper, or that his grandmother's consent was coerced.  Absent those conclusions, counsel did not unreasonably err in opting not to file a motion to suppress.  As a result, Williams does not raise a valid claim of ineffective assistance of counsel with respect to this issue.

     a.  <u>Knock and Talk Procedure</u>

A "knock and talk" is a legitimate investigative tool that officers may employ when they either reasonably suspect criminal activity, or seek to gain an occupant's consent to search the premises.  *United States v. Jones,* 239 F.3d 716, 720 (5th Cir. 2001) (citing *United States v. Tobin*, 923 F.2d 1506, 1511 (11th Cir.), *cert denied,* 502 U.S. 907 (1991)).  In a "knock and talk", in order to acquire more information regarding a criminal investigation or to obtain an occupant's consent in the absence of probable cause, officers typically approach the door of a residence to begin a verbal exchange.  *Id.*  Because the occupant is free to either respond to a knock at the door, or ignore it entirely, police are not required to have a warrant or probable cause; a reasonable suspicion of criminal activity provides a sufficient basis for the procedure.  *Jones,* 239 F.3d at 720.  In the context of a drug-related offense, an officer who approaches a residence in order to identify the occupants and discuss the complaints of drug activity has acted reasonably pursuant to an

investigation. *United States v. Hardeman,* 36 F.Supp.2d 770, 777 (E.D. Mich 1999).

In the case *sub judice*, the "knock and talk" conducted by police was reasonable and did not violate the Fourth Amendment protections against unlawful search and seizure, because officers had a reasonable basis for their suspicion of criminal activity. (*See* Rec. Doc. No. 20 at 1). Specifically, police had received a complaint that Williams was selling drugs from the residence he shared with his grandmother. *Id.* Although the complaint alone did not merit a warrant or justify a warrantless search of the apartment, it certainly established a reasonable basis for an investigation. *See United States v. Jenkins,* 46 F.3d 447, 452 (5th Cir. 1995). As the Fifth Circuit has observed, "it is beyond question that the government has the right to investigate possible illegal activity, and this investigative power encompasses the right to use confidential sources." *Id.* Having received a complaint about Williams' suspected activity, police acted reasonably in initiating a "knock and talk." *See Id.*

Second, police conducted the "knock and talk" in a reasonable manner, particularly in the context of a drug-related investigation. *See Hardeman,* 36 F.Supp.2d at 777. Upon receiving the complaint, officers approached Williams' apartment to investigate. (Rec. Doc. No. 20 at 1). There, they spoke to Ms. Pecola Davis, Williams' grandmother. *Id.* Officers discussed

11

the complaints of drug activity with Ms. Davis and explained that they were there to investigate. *Id.* At that point, Ms. Davis gave permission for the police to enter the residence. *Id.* There is no evidence that police used physical force or intimidation. *See Id.* Nor is there any suggestion that they opened the door, or entered the house prior to receiving permission. *See Id.* After Ms. Davis allowed officers inside the residence and gave her written consent for a search, officers observed what they believed to be crack and cocaine residue in plain view; at this point, they seized the evidence in plain view, tested it, then left the residence in order to obtain a warrant. *Id.* at 2. Throughout the encounter, officers brought their conduct within the confines of proper "knock and talk" procedure, which permits approaching a residence to discuss the nature of a complaint with the occupants. *Florida v. Royer*, 460 U.S. 491, 498 (1983).

    b. <u>Consent Sufficient to Justify Search</u>

Warrantless searches are per se unconstitutional unless they fall subject to one of the few established and well-defined exceptions to the general rule. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Within that framework, a consented-to search is one of those specifically established exceptions to the requirements of both a warrant and probable cause. *Id.* To satisfy this exception, consent must be freely and voluntarily

given by a party with actual or apparent authority. *United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir. 2010). Because the government bears the burden to prove voluntariness, it must show by a preponderance of the evidence that consent was not coerced. *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968).

Whether or not consent was voluntarily given is a question of fact to be determined from the totality of the circumstances. *Schneckloth,* 412 U.S. at 227. The Fifth Circuit's six-factor test to determine voluntariness considers: (1) voluntariness of custodial status, (2) the presence of coercive police procedures, (3) the extent and level of cooperation with police, (4) awareness of the right to refuse to consent, (5) education and intelligence, and (6) the belief that the search would not reveal incriminating evidence. *United States v. Jenkins*, 46 F.3d 447, 451 (5th Cir. 1995)(*citing United States v. Olivier-Becerril*, 861 F.2d 424, 426 (5th Cir. 1988)); *United States v. Kelley*, 981 F.2d 1464, 1470 (5th Cir. 1993). Although all six factors are relevant in the court's determination of voluntariness, no single one is dispositive or controlling. *Kelley,* 981 F.2d at 1470. Crucially, knowledge of the right to refuse consent is not a requirement of voluntariness, although it may be considered as part of the totality of factors test. *Schneckloth,* 412 U.S. at 227. By contrast, a defendant's expressed desire to be left alone, objection to the presence of police, and refusal to

13

verbalize consent to a search may militate against a finding of voluntariness. *United States v. Mendenhall*, 446 U.S. 544 (1980).

In the instant case, Ms. Davis' written consent satisfies the voluntariness requirement when considered in light of the totality of factors test. *See Kelley*, 981 F.2d at 1470. (1) At the time of Ms. Davis' consent, she was not in custody. (*See* Rec. Doc. No. 20 at 1). Although the police officers had explained the purpose of their visit, there is no evidence that she was not free to leave or that she believed that she was in custody. *Id*. (2) Coercive police procedures were absent as there is no suggestion of intimidation. *Id.* Officers did not draw their weapons; Ms. Davis does not allege that threats were made, or that physical force was used. (Rec. Doc. No. 20 at 1; (Rec. Doc. No. 48-1 at 32.) Throughout the encounter, Ms. Davis remained within the familiar settings her home. (Rec. Doc. No. 20 at 1).

In her affidavit, Ms. Davis does not allege that the officers obtained the consent through an assertion of authority, or suggested that they would get a warrant regardless of whether consent was granted. (Rec. Doc. 48-1 at 32). (3) The extent of Ms. Davis' cooperation further suggests that her consent was voluntary. (*See* Rec. Doc. No. 20 at 1). Ms. Davis voluntarily spoke with the officers who came to her residence and allowed them inside. *Id.* Ms. Davis then advised the officers as to the location of Williams' bedroom, explaining that her own bedroom

14

occupied the other side of the apartment. *Id*. at 2.   Williams does not allege that his grandmother objected to police presence, verbally refused to grant consent, or expressed a desire to be left alone. (Rec. Doc. No. 48 at 7).   (4) At most, Williams asserts that Ms. Davis' affidavit indicates the police did not inform Ms. Davis of her right to refuse consent. (Rec. Doc. Nos. 51 at 2; 48-1 at 32).   However, the fact that Williams' grandmother was not informed that she could deny consent is not given controlling significance. *United States v. Freeman*, 482 F.3d 829, 832-833 (5th Cir. 2007).   Therefore, assuming *arguendo* that the officers did not inform Ms. Davis of her right to refuse consent, this is only one factor out of six to be considered in deciding whether her consent was voluntary. *See Id.* (5) The record is insufficient to render a conclusion on Ms. Davis' education and intelligence.   Although Williams emphasizes that she was 70 years old at the time of the search, he does not allege that his grandmother suffered below-average intelligence or was otherwise unable to understand the officer's request. (Rec. Doc. No. 51 at 2).   (6) Finally, Ms. Davis told officers that she was unaware of any illegal drug activity in her home. (Rec. Doc. No. 20 at 1).   Ms. Davis' belief that the search would not reveal any incriminating evidence further indicates that her consent was voluntarily given. *See Freeman*, 482 F.3d at 833(finding that the defendant's contention that he was unaware

15

of the presence of cocaine suggested the voluntariness of his consent).

Analyzing the evidence before the Court, four of the six factors weigh in favor of a finding of voluntary consent. Consequently, her written consent constitutes an exception to the requirement of probable cause, and the officers' search of the residence was not unreasonable.  Williams has therefore not adequately alleged facts that justify the exclusion of evidence seized on January 22, 2008; as a result, counsel's decision not to file a motion to suppress did not violate an objective standard of reasonableness for his profession.  Because counsel's performance was not deficient, Williams' claim that he suffered ineffective assistance of counsel on this issue is unavailing.

2. <u>Factual Basis Establishes § 924(c) Violation</u>

Williams alleges that counsel was deficient for advising him to plead guilty to Count Three of the offense.  According to Williams, the Factual Basis does not sufficiently establish that he violated § 924(c), which establishes penalties for "any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in the furtherance of any such crime, possesses a firearm." 18 U.S. C. § 924(c)(1)(A); (Rec. Doc No. 48 at 9).  Williams also contends that counsel's defective performance prejudiced him; but-for counsel's defective advice, Williams alleges that he would not

16

have pleaded guilty and would have proceeded to trial. *Id*. at 12.

For the reasons explained infra, Williams does not adequately demonstrate that the Factual Basis was insufficient to establish a §924(c) violation.  He also does not establish that, if advised differently, he would have gone to trial rather than pleading guilty.  Absent these two findings, Williams does not raise a valid claim of ineffective assistance of counsel on this issue.

a. <u>Factual Basis and Report Allege Sufficient Facts</u>

Title 18 U.S.C. §924(c) imposes criminal penalties on "any person who, during and in relation to any crime of violence or drug trafficking ... uses or carries a firearm, or who, *in furtherance of any such crime, possesses a firearm*.  18 U.S.C. §924(c)(1)(A).  "In furtherance" is interpreted as the act of furthering, advancing or helping forward.  *United States v. Ceballos-Tores*, 218 F.3d 409, 414 (5th Cir. 2000).  "Mere presence" of a firearm, however, is not alone sufficient to demonstrate a § 924(c) offense.  *Id*.  Put another way, a drug-dealer's possession of a firearm does not trigger the automatic assumption that the possession is "in furtherance of" a drug-trafficking crime; a sufficient nexus between the two must exist first.  *Id*.  For example, the Fifth Circuit in *Ceballos-Tores* stated, "a drug dealer whose only firearms are unloaded antiques

17

mounted on the wall does not possess those firearms 'in furtherance' of drug trafficking." *Id.* at 415. In order to establish whether a specific defendant's possession furthers the drug trafficking offense, the Court may consider factors such as: the type of drug activity conducted, the accessibility of the firearm, the type of weapon, whether the gun is stolen, the status of the possession (legitimate or illegitimate), whether the gun is loaded, the gun's proximity to the drugs or drug profits, and the time and circumstances in which the gun and the drugs are discovered. *Id.* When a firearm is easily accessible to its owner and kept in an apartment along with a sizeable amount of drugs and drug money, the facts reasonably support the inference that the gun possession was in furtherance of drug trafficking. *Id. (See also United States v. London*, 568 F.3d 553, 559 (5th Cir. 2009)).

In this case, the facts are sufficient to establish that Williams possessed a firearm in furtherance of a drug trafficking crime, and is thus subject to penalties under § 924(c). Specifically, several of the factors enunciated by the Fifth Circuit are present in the instant case. *Id.* According to the Factual Basis, a search of Williams' room revealed three digital scales, four clear plastic baggies of marijuana weighing approximately 97 grams, approximately 128 grams of crack, 126 grams of cocaine, $5,142.000 in cash. (Rec. Doc. No. 20 at 2).

18

Police also discovered two firearms in Williams' bedroom, one of which was a .380 caliber pistol. *Id.* According to the police report, the pistol was located underneath Williams' bed, with eight rounds of ammunition located near it. (Rec. Doc. No. 50 at 10). Furthermore, Williams is a convicted felon, for whom any possession of a firearm is illegal. *Id.* Because the firearms were maintained in close proximity to the drugs, were easily accessible to Williams, were possessed illegally due to William's prior felony convictions, and were kept adjacent to several rounds of ammunition, the record establishes a nexus sufficient to demonstrate that Williams possessed his firearms in furtherance of a drug trafficking offense. *See Id.* Moreover, because the Factual Basis establishes a §924(c) offense, counsel was not deficient for advising Williams to plead guilty.

   b.  <u>Williams Not Prejudiced by Advice of Counsel</u>

Williams cannot demonstrate with a reasonable probability that, absent his counsel's conduct, he would have insisted on a trial rather than pleading guilty. The sentence Williams received was predicated on a guilty plea to both Count One and Count Three. (Rec. Doc. No. 36 at 5). Because Williams had more than two prior convictions for felony drug offenses, he would have faced a mandatory term of life imprisonment with respect to Count One, pursuant to the Government's filing of the § 851 information, had he proceeded to trial and been convicted. *Id.*

19

According to the negotiated plea, the government agreed to only notice one of Williams' prior convictions, thus enabling him to receive a reduced sentence. *Id.* If Williams had insisted on trial, he would have lost this opportunity to receive the minimum sentence of 20 years imprisonment for Count One. *Id.* The Fifth Circuit has previously held that when a defendant faces a much greater sentence if convicted, it is unlikely that he would have proceeded to trial absent any errors by counsel. *See Payne*, 99 F.3d at 1282. As a result, Williams cannot establish that he suffered prejudice that significantly altered the outcome of his sentence.

Because Williams cannot demonstrate that his counsel was deficient in advising him to plead guilty to Count Three, or that he suffered prejudice as a result, he fails to establish either prong of the *Strickland* test, and thus does not state a valid claim for ineffective assistance of counsel with respect to this issue.

3. Timeliness of § 851 Enhancement

Williams argues that his counsel was deficient in failing to object to the timeliness of the government's filing of a 21 U.S.C. § 851 enhancement. (Rec. Doc. No. 48 at 13-14.) Williams asserts that, according to the instant docket sheet, the § 851 bill of information noticing a sentence enhancement was filed on April 22, 2009, more than six months after Williams entered his

guilty plea on November 5, 2008.  (Rec. Doc. No. 48 at 14).  If true, the government would have failed to provide Williams with adequate notice of its decision to seek an enhanced sentence as required by 21 U.S.C. § 851.  *United States v. Dodson*, 288 F.3d 153, 159 (5th Cir. 2002).  Williams alleges that counsel's failure to object impermissibly prejudiced the outcome of his sentence. (Rec. Doc. No. 48 at 14).

Williams is not entitled to relief on this issue, however, as the Government filed a timely § 851 bill of information before Williams entered his guilty plea.  (Rec. Doc. No. 28 at 7).  According to the Rule 11 Colloquy with Williams, the AUSA filed the § 851 enhancement in open court.  *Id.*  The Court then proceeded to explain the impact of the § 851 enhancement to Williams, noting:

> The maximum penalty upon a plea of guilty to Count 1, the drug charge, is a mandatory minimum sentence of 20 years imprisonment ... which is an enhancement based upon the Bill of Information that the government is filing in connection with your rearraignment and Plea Agreement.

*Id.* at 8.  The Court thoroughly questioned Williams to ensure he understood the consequences of the enhancement.  *Id.* at 9.  Specifically, the Court asked, "How do you plead, sir, to those charges in Count 1 and 3 of the Indictment and the Bill of Information seeking the enhancement?"  *Id.*  Williams responded, "guilty."  *Id.*  The Court persisted, "I know you said you understood the charges in the Indictment and the Bill of

Information for enhancement against you, but have you gone over that with your lawyer?" *Id.* Again, Williams replied affirmatively, stating, "yes, sir." *Id.* The Court's thorough questioning of Williams, taken in conjunction with his numerous references to the bill of information throughout the plea colloquy leave little doubt as to the existence of the § 851 enhancement and the time-frame of its filing. *Id.* For his part, Williams verbally acknowledged the § 851 enhancement in his replies to the Court's questioning and signed the Plea Agreement, which referred to the Bill of Information's impact on the penalties imposed by Count One of the Indictment. (Rec. Doc. No. 20 at 2).

Despite ample evidence that the bill of information was filed in open court, the § 851 enhancement was not included in the court record. On April 21, 2009, the government filed a motion to conform, correct, and supplement the record to represent the § 851 information. (Rec. Doc. No. 36). On May 22, 2009, the Court located the Bill of Information and corrected the record to reflect as much. (Rec. Doc. No. 43). Thus the government's motion on April 21, 2009 did not file the Bill of Information for the first time, but rather sought to correct the record to reflect its existence. (*See* Rec. Doc. No. 36).

The Fifth Circuit reached the same conclusion when the issue of the missing enhancement was raised in Williams' appeal.

22

According to the Court, "Williams repeatedly and affirmatively acknowledged that he would receive an enhanced sentence." *United States v. Williams*, 2009 WL 3199614, at **1 (5th Cir. 2009). Because the § 851 enhancement was properly filed, Williams' counsel was not deficient in failing to raise an objection. As a result, Williams' constitutional right to effective counsel was not violated.

C. <u>Request for Discovery, Evidentiary Hearing, and C.O.A.</u>

　　1. <u>Discovery and Evidentiary Hearing</u>

Williams is not entitled to discovery or an evidentiary hearing on the issues raised in his motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. A federal habeas court "must allow discovery and an evidentiary hearing only where a factual dispute, if resolved in the petitioner's favor, would entitle him to relief ..." *United States v. Webster*, 392 F.3d 787 (5th Cir. 2004)(*quoting Ward v. Whitely*, 21 F.3d 1355, 1367 (5th Cir. 1994)). Conclusory allegations are insufficient to warrant discovery or an evidentiary hearing; instead, the petitioner must set forth specific factual allegations. *Id.* In this case, Williams fails to allege any specific factual dispute. Although he states conclusorily that his grandmother's consent was involuntary, that his possession of a firearm was not in furtherance of a drug crime, and that the government's § 851 enhancement was untimely, he alleges no facts

23

to establish any of these claims, or to support the underlying assertion that he suffered ineffective assistance of counsel. Because he has not alleged any factual dispute, which, if resolved in his favor, would entitle him to relief, Williams' claims do not warrant discovery or an evidentiary hearing.

    2. <u>Certificate of Appealability</u>

    Williams is not entitled to a COA on his claim of ineffective assistance of counsel.  To obtain a COA, a petitioner must make a substantial showing of the denial of a constitutional right.   28 U.S.C. § 2253(c)(2); *Webster*, 392 F.3d at 791.   The petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).   Whether the petitioner is entitled to a COA is determined from a general assessment of the claim's merits. *Webster*, 392 F.3d at 791.   In this case, a general assessment of Williams' claim yields the conclusion that he has not made a substantial showing of a denial of his constitutional right to effective assistance of counsel. As a result, Williams has failed to show that reasonable jurists could debate whether the motion should have been resolved in a different manner or that the issues presented were adequate to

24

deserve encouragement to proceed further.  For this reason, he is not entitled to a COA.

### III. *Conclusion*

For the reasons articulated above, as Petitioner has failed to establish ineffective assistance of counsel, Petitioner's Motion to Vacate, Set Aside, or Correct his sentence under 28 U.S.C. § 2255 (Rec. Doc. No. 48) is denied.

New Orleans, Louisiana, this 8TH day of July, 2011.


UNITED STATES DISTRICT JUDGE

25